3        **UNITED STATES DISTRICT COURT**

4      **FOR THE EASTERN DISTRICT OF CALIFORNIA**

5

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **1:13-cr-00189-LJO** |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE MAURICE HUNT'S 28 U.S.C. § 2255 MOTION (ECF No. 155)** |
| v. | |
| **MAURICE HUNT,** | |
| Defendant. | |

## I. INTRODUCTION

Petitioner Maurice Hunt, a prisoner in federal custody proceeding *pro se*, moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. *See* ECF No. 155. For the reasons discussed below, the Court **DENIES** Petitioner's motion in its entirety.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    The Underlying Conviction

On August 9, 2013, a jury found Petitioner guilty of one court of sex trafficking of a minor or by force, fraud, and coercion under 18 U.S.C. § 1591(a)(1); three counts of corruptly endeavoring to influence, obstruct, or impede the due administration of justice under 18 U.S.C. § 1503; and two counts of witness tampering under 18 U.S.C. § 1512(b)(1). *See* ECF No. 76. On October 28, 2013, Petitioner was sentenced to 600 months in custody. *See* ECF Nos. 98, 99.

_____

[1] Although the Court has reviewed the entire relevant record, including all of Petitioner's supplemental filings, the Court will discuss only the procedural and background facts necessary to resolve Petitioner's § 2255 motion.

1    **B.**      **Petitioner's Pre-Trial, Trial, and Appellate Representation**

2          The Government's opposition documents Petitioner's extensive history of caustic and

3    uncooperative relationships with his appointed counsel and this Court, and the Court adopts and

4    incorporates by reference the Government's recitation of these facts and the relevant citations to the

5    record.  *See* ECF No. 175 at 1-6.  In short, before trial, Petitioner was represented by two different,

6    equally competent counsel before insisting on proceeding *pro se* at trial.  *Id.* at 4-5.  The perils of such

7    *pro se* representation were repeatedly explained to Petitioner.  *See, e.g.*, *id.* at 4-5, 8.  On the third day of

8    his trial, during the presentation of his defense, Petitioner refused to participate any further in the trial.

9    *Id.* at 1-2, 5.  Despite being given multiple opportunities that day and the next, Petitioner steadfastly

10   refused to comport himself within the rules of courtroom decorum and participate in his trial, and the

11   Court did not have any choice but to remove Petitioner from the courtroom. *Id.* at 1-2, 5, 7-8. Petitioner

12   did not participate in the jury instruction process or give any closing argument.  *Id.*  Petitioner was

13   convicted on all counts. ECF No. 76.  After conviction, at Petitioner's request, another experienced

14   criminal defense attorney was appointed to represent Petitioner at sentencing, but Petitioner later insisted

15   on representing himself.  *Id.* at 6.

16         On appeal, Katherine L. Hart was the first attorney appointed to represent Petitioner.  ECF No.

17   175 at 2.  As documented in Ms. Hart's declaration and the exhibits attached thereto, Petitioner was

18   antagonistic and abusive toward Ms. Hart from the start and throughout her representation of Petitioner,

19   despite her diligent work to develop the best possible appellate arguments.  *Id.*; *see also* ECF No. 175-1,

20   Ex. A.  Indeed, Petitioner filed or attempted to file at least two dozen different documents that

21   undermined, contradicted, or supplemented arguments or filings by Ms. Hart, even though the Ninth

22   Circuit repeatedly admonished Petitioner that because he was represented by counsel, only counsel

23   could file submissions and his pro se submissions would not be entertained.  *Id.*  Despite Petitioner's

24   uncooperative and abusive behavior, Ms. Hart filed an oversized brief containing eight arguments

25   challenging each of his convictions, supported by the relevant law and factual record.  *Id.*

The Ninth Circuit permitted Ms. Hart to be relieved as appellate counsel on March 19, 2015. ECF No. 175 at 2. The Ninth Circuit then appointed Barry L. Morris, an attorney with significant trial and appellate experience, to continue with Petitioner's appeal. *Id.* at 3. Again, as documented in a declaration by Mr. Morris, Petitioner was antagonistic and abusive towards his represented counsel, but nevertheless Mr. Morris filed a 59-page reply brief focused on six issues. *Id.*; *see also* ECF No. 175-1, Ex. B. As with Ms. Hart, despite Mr. Morris's diligent work, Petitioner moved to remove Mr. Morris as counsel and continued to undermine his counsel's work through numerous pro se submissions, and the Ninth Circuit once again admonished Petitioner and refused to entertain his pro se submissions. *Id.*

Petitioner's conviction was affirmed by the Ninth Circuit on November 12, 2015. *See United States v. Hunt*, 622 F. App'x 656, 657 (9th Cir. 2015). After the Ninth Circuit issued its opinion , Mr. Morris reviewed the decision and record, and concluded there was no basis for a petition for rehearing or a petition for a writ of certiorari to the Supreme Court. ECF No. 175 at 3. Accordingly, Mr. Morris moved to withdraw from Petitioner's case and the Ninth Circuit granted his request. *Id.* Petitioner did not file a petition for rehearing.

Petitioner filed a *pro se* petition for writ of certiorari to the United States Supreme Court on January 5, 2016, and the petition was denied on October 3, 2016. *See Hunt v. United States*, 137 S. Ct. 91 (2016).

**C.** **Petitioner's § 2255 Motion**

On October 5, 2017, Petitioner filed this § 2255 motion *pro se*. ECF No. 155. The United States filed its opposition on May 11, 2018. ECF No. 175. Petitioner filed his reply on July 16, 2018. ECF No. 185. In the following months, Petitioner also filed several notices of supplemental case authority and requests for status updates. ECF Nos. 188-193, 195, 198.

Petitioner's § 2255 motion is more than 200 pages long and raises 44 "grounds" for relief. *See*

ECF No. 155.[2]  The Government asserts at threshold that Petitioner procedurally defaulted or otherwise waived numerous arguments due to his refusal to participate in trial and failure to raise such grounds on appeal.  The Government further argues that none of Petitioner's claims of ineffective of counsel or other remaining claims permit vacating Petitioner's convictions.

## III. LEGAL STANDARD

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence.  *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988).  A § 2255 motion to vacate, set aside, or correct the sentence of a federal prisoner entitles the prisoner to relief "[i]f the court finds that … there has been such a denial or infringement of the constitutional rights of the prisoner . . . ."  28 U.S.C. § 2255(b).

Generally, only a narrow range of claims fall within the scope of § 2255.  *United States v. Wilcox*, 640 F.2d 970, 972 (9th Cir. 1981).  To warrant relief, a petitioner must demonstrate the existence of an error of constitutional magnitude that had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that Brecht's harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.").  The alleged error of law must be "a fundamental defect which inherently results in a complete miscarriage of justice."  *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).[3]

---

[2] Petitioner's claims are numbered inconsistently, and single "grounds" often contain multiple claims.  The Court has inserted letters where needed to identify single grounds with multiple, separate parts.  For example, Ground 44 argues that the Government violated *Brady*, appellate counsel was ineffective for not raising the alleged violation, and an evidentiary hearing is needed on the alleged late-produced evidence.  *See* ECF No. 155 at 205-8.  The Court has relabeled these claims as 44A, 44B, and 44C, respectively.  When the Court provides pin cites to pages for a given ground in ruling or discussion, unless stated otherwise, the Court is only citing to the page where a ground begins, not every page encompassing a ground.

[3] While certain "structural errors" can be subject to automatic reversal, Petitioner makes no meritorious claims that would be among the "short and limited" list of structural errors.  *See Neder v. U.S.*, 527 U.S. 1, 8 (1999) (collecting cases and listing

4

As a *pro se* litigant, the petitioner's pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, the requirement of liberal construction does not mean that the court can ignore an obvious failure to allege facts which set forth a cognizable claim. "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see also Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir.1989) ("vague and conclusory" allegations in a § 2255 motion do not support relief); *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir.1980) ("[w]e also concur in the dismissal of the allegations concerning the photographic array shown to some witnesses as vague, conclusory and without any facts alleged in support of the claim); *Neighbors v. United States*, 457 F.2d 795 (9th Cir.1972) (§ 2255 motion was properly denied where allegations regarding denial of effective assistance of counsel were entirely conclusory and without support in the record).

"When a district court reviews a § 2255 habeas motion, '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.'" *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2010) (quoting 28 U.S.C. § 2255). The court need not hold an evidentiary hearing where the prisoner's allegations, when viewed against the record, either do not state a claim for relief or are "so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1994) (internal citations omitted). Thus, an evidentiary hearing is only required if: (1) the prisoner "allege[s] specific facts which, if true, would entitle him to relief; and (2) the petition, files and record of the case cannot conclusively show that he is entitled to no relief." *United States v. Howard*, 381 F.3d

examples of structural defects); *Montalvo*, 331 F.3d at 1056-67 (same); *but see also Weaver v. Massachusetts*, 137 S. Ct. 1899, 1911-12 (2017) (structural errors not raised on direct review but instead collaterally via ineffective assistance of counsel claims not necessarily subject to automatic reversal).

873, 877 (9th Cir. 2004).

## IV. DISCUSSION

For the reasons discussed below, all of Petitioner's grounds fail and will be denied.

### A.    Law of the Case Doctrine

"Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or the higher court, in the same case." *United States v. Smith*, 389 F.3d 944, 948 (9th Cir.2004) (internal quotation marks and citation omitted).  The doctrine "is a judicial invention designed to aid in the efficient operation of court affairs . . . not an inexorable command." *Smith*, 389 F.3d at 948–49 (internal quotations omitted).  "For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in [the] previous disposition." *United States v. Jingles*, 702 F.3d 494, 499-500 (9th Cir.2012) *cert. denied*, 568 U.S. 1257 (2013) (internal quotation marks and citations omitted).  "An argument is rejected by necessary implication when the holding stated or result reached is inconsistent with the argument." *Jingles*, 702 F.3d at 502 (quoting *United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005)).

"The law in this circuit is clear that when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a [§] 2255 motion." *Odom v. United States*, 455 F.2d 159, 160 (9th Cir. 1972); *see also United States v. Scrivner*, 189 F.3d 825, 828 (9th Cir. 1999) ("In this case, Scrivner's Fifth Amendment claim was presented to [the Ninth Circuit] on direct appeal in *Scrivner I* and rejected on the merits. That decision is binding on our resolution of the case."); *United States v. Redd*, 759 F.2d 699, 700–01 (9th Cir. 1985) ("Redd raised this precise claim in his direct appeal, and this court expressly rejected it. Therefore, the claim cannot be the basis of a 2255 motion."); *United States v. Ortiz–Villalobos,* Cr. No. 02–0213-MCE-CMK, 2007 WL 2727131, at *3 (E.D. Cal. Sept.17, 2007), *report and recommendation adopted*, 2007 WL 4260933 ("Because the Court of Appeals has already concluded that the evidence was sufficient to support movant's conspiracy objections, the sufficiency of the evidence cannot be relitigated in the context of a § 2255 motion."); *United States v.*

*Matlock*, Cr. No. 92–0315-GEB-PANP, 2006 WL 306902, at *2 (Feb. 8, 2006), *report and recommendation adopted*, 2006 WL 902275 ("Absent exceptional circumstances, a matter decided adversely on direct appeal from a conviction cannot be relitigated on a section 225  motion.").

The "law of the case" doctrine is subject to three exceptions: "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Old Person v. Brown*, 312 F.3d 1036, 1039, 1043 (9th Cir.2002) (describing the exceptions to law of the case as "limited") (internal quotation marks and citations omitted); *see also Jingles*, 702 F.3d at 503 n.3 (noting some decisions have formulated the exceptions differently but stating the *en banc* court has consistently identified only three exceptions, and adopting the same).

The Ninth Circuit held as follows on Petitioner's direct appeal in this case:

- Petitioner's conduct had the required substantial effect on interstate commerce for purposes of his sex trafficking conviction under 18 U.S.C. § 1591.

- The Government established the interstate-nexus element of § 1591 via introducing evidence that Petitioner took the victim to a motel that serves out-of-state customers and does its banking with an institution with locations in nineteen states.

- A § 1591 conviction "may be premised on the defendant's knowledge or reckless disregard of the fact that 'means of force, threats of force, fraud,' or coercion will be used to cause a victim to engage in a commercial sex act. 18 U.S.C. § 1591(a). This element of the offense was established by evidence that Hunt knew 'in the sense of being aware of an established modus operandi that' would in the future cause the victim to engage in prostitution by force, fraud, or coercion." *Hunt*, 622 F. App'x at 657 (quoting *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2009)).

- § 1591 is not unconstitutional absent proof of a defendant's *mens rea* as to age because the presumption of construing statutes to include *mens rea* requirements does not apply to sex crimes

7

against minors if the defendant "confronts the underage victim personally."

- The Court did not commit plain error in its failure to define "corruptly" in the jury instruction on witness tampering, the obstruction of justice instruction did define "corruptly," and neither instruction covered innocent conduct.

- There was sufficient evidence to convict Petitioner of obstruction of justice.

- There was sufficient evidence to convict Petitioner of witness tampering.

*See Hunt*, 622 Fed. App'x at 657-58.

Several of Petitioner's claims relitigate matters decided explicitly or by necessary implication on direct appeal, including:

- Ground 10A, claiming that the Ninth Circuit's use of *Todd*'s definition of "knowing" based on *modus operandi* violated Petitioner's due process rights because it creates a vague statute with different definitions of each use of the word "knowing" in § 1591, and further that such a rationale permits establishing "knowledge" regardless of the defendant's subjective intent. *See* ECF No. 155 at 49.

- Ground 10B, asserting that the Ninth Circuit's definition of "knowing" based on *modus operandi* allows conviction without awareness of wrongdoing. *See* ECF No. 155 at 56.

- Ground 10C, arguing that the Government presented no evidence at trial that Petitioner knew that using force against the victim would cause her to engage in a commercial sex act. *See* ECF No. 155 at 60.

- Ground 11A, that the Ninth Circuit's use of *Todd*'s *modus operendi* to establish knowledge that force/threats/coercion would cause the victim to engage in a commercial sex act constructively amended the jury instructions and violates Due Process rights. *See* ECF No. 155 at 69.

- Ground 14, that the Ninth Circuit's use of *Todd*'s *modus operendi* to establish knowledge that force/threats/coercion would cause the victim to engage in a commercial sex act is the equivalent of allowing conviction on a negligent mental state not contained in § 1591. ECF No. 155 at 87.

These claims amount to Petitioner's disagreement with the Ninth Circuit's reliance on *Todd* in holding that the element of "knowing" "was established in this case by evidence at trial that Petitioner "knew 'in the sense of being aware of an established modus operandi that' would in the future cause the victim to engage in prostitution by force, fraud, or coercion." *Hunt*, 622 F. App'x at 657. Petitioner's arguments for these grounds were rejected explicitly or by necessary implication via the Ninth Circuit's reliance upon the published, binding *Todd* opinion. And Petitioner has not shown that any exceptions to the law of the case doctrine apply. *See Jingles*, 702 F.3d at 503. Indeed, as described below, the Court finds the intervening authority cited by Petitioner does not require granting his motion, Petitioner does not otherwise show the Ninth Circuit's decision was clearly erroneous and its enforcement would work a manifest injustice, and there have not been any subsequent trials where substantially different evidence was adduced. *Id*. And, even if considered on the merits, none of these grounds establishes "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis*, 417 U.S. at 346 (quoting *Hill*, 368 U.S. at 428); *see also Brecht*, 507 U.S. at 637.

The Ninth Circuit's ruling on these issues is binding, and the law of the case doctrine prohibits Petitioner from relitigating them in his § 2255 petition, particularly given Petitioner has not shown such re-litigation is warranted by exceptional circumstances, much less any substantive merit. Thus, these grounds – *see* ECF No. 155 at 49 (Ground 10A), 56 (Ground 10B), 60 (Ground 10C), 69 (Ground 11A), 87 (Ground 14) –are **DENIED**.

**B.      Procedural Default**

Relatedly, claims that could have been, but were not, raised on direct appeal are not cognizable in § 2255 motions. *See United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal.); *Sunal v. Large*, 332 U.S. 174, 178 (1947) ("So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal"); *Unites States v. Dunham*, 767 F.2d 1395, 1397 (9th Cir. 1985) ("Section 2255 is not designed to provide criminal

defendants repeated opportunities to overturn their convictions on grounds which could have been raised on direct appeal").

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice', or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted); *see also United States v. Braswell*, 501 F.3d 1147, 1149, 1150 n. 1 (9th Cir.2007) ("[M]ost claims are procedurally defaulted by both federal and state prisoners in habeas proceedings when not raised on direct appeal, absent a showing of cause and prejudice or actual innocence.").

Cause may be based on "some objective factor external to the defense [that] impeded counsel's efforts to comply with the . . . procedural rule . . . ." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Examples of such "objective factor[s]" include "where the claim rests upon a new legal or factual basis that was unavailable at the time of direct appeal, or where 'interference by officials' may have prevented the claim from being brought earlier." *Braswell*, 501 F.3d at 1150 (quoting *Murray,* 477 U.S. at 488); *see also Reed v. Ross*, 468 U.S. 1, 17 (1984) (describing situations when a "new" constitutional rule constitutes "cause").

As to prejudice, "[i]f a petitioner succeeds in showing cause, the prejudice prong of the test requires demonstrating 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Braswell*, 501 F.3d 1147, 1150 (quoting *Frady*, 456 U.S. at 170).

Claims that "could not be presented without further factual development" and independent claims of ineffective assistance of counsel are excluded from the procedural default rule and may be heard on collateral review, even though the defendant could have, but did not raise the claim on direct appeal. *See Bousley*, 523 U.S. at 621-22; *Massaro v. United States*, 538 U.S. 500, 504-5, 509 (2003); *see also United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993) (pre-*Massaro* case that held "Ineffective assistance of counsel constitutes 'cause' for failure to raise a challenge prior to section 2255

10

collateral review."); *United States v. Ratigan*, 351 F.3d 957, 964–65 (9th Cir.2003) (Cause may also be established by attorney error that rises to the level of constitutionally ineffective assistance of counsel).

"Actual innocence" claims are also excepted from the procedural default bar. *See Murray*, 477 U.S. at 496. The term "actual innocence" means "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623; *see also United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (same). A procedurally defaulted claim may be reviewed in a collateral proceeding if a petitioner establishes that "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327-328 (1995); *Avery*, 719 F.3d at 1083 (same); *see House v. Bell*, 547 U.S. 518, 536-7 (2006) (*Schlup* "gateway" innocence claim, *i.e.*, an innocence claim sufficient to excuse a procedural default, allowing a court to examine an alleged underlying constitutional violation, "requires new reliable evidence . . . that was not presented at trial.") (internal quotations omitted); *see also Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (a habeas petitioner may also raise a "freestanding" actual innocence claim, but this requires an "extraordinarily high" showing, where a petitioner "must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent."); *Boyde v. Brown*, 404 F.3d 1159, 1168 (9th Cir. 2005) (same articulation of "freestanding" innocence claim standard).

As described throughout this memorandum decision, the vast majority of Petitioner's claims could have been raised on direct appeal. Aside from Petitioner's grounds regarding (1) ineffective assistance of appellate counsel; (2) intervening changes in the law; and (3) post-trial disclosure of alleged *Brady* materials, arguably all of Petitioner's other claims could have been brought before the Ninth Circuit. Petitioner does not establish cause or prejudice sufficient to excuse the failure to raise these claims. Further, while Petitioner makes sporadic and indirect claims of innocence, Petitioner does not come close to making a *Schlup* gateway innocence claim, based on actual, "new reliable evidence . . . . that was not presented at trial," *House*, 547 U.S. at 537, sufficient to establish that "it is more likely than not that no reasonable juror would have convicted him," *Schlup*, 513 U.S. at 328, much less a claim

meeting the "extraordinarily high" burden of a "freestanding" innocence claim, *see Boyde*, 404 F.3d at 1168. Thus, Petitioner does not show that he is actually innocent. Therefore, Petitioner procedurally defaulted on all grounds that do not fall into those three categories, and they are **DENIED** for that reason alone. Moreover, as described below, these grounds would be properly denied on the merits, as Petitioner is repeatedly wrong on the law and the facts.

## C.     Ineffective Assistance of Appellate Counsel

Ineffective assistance of counsel claims may be heard on collateral review, even if a defendant could have, but failed to, bring the claim on direct appeal. *See Massaro*, 538 U.S. at 504-5, 509; *see also De la Fuente*, 8 F.3d at 1337; *Ratigan*, 351 F.3d at 964–65. The law governing ineffective assistance of counsel claims is clearly established. *Canales v. Roe*, 151 F.3d 1226, 1229 (9th Cir.1998). In *Strickland v. Washington*, the Supreme Court held that there are two components to an ineffective assistance of counsel claim: "deficient performance" and "prejudice." 466 U.S. 668, 694 (1984).

First, "deficient performance" means representation that "fell below an objective standard of reasonableness." *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir.2011) (citing *Strickland*, 466 U.S. at 688). A defendant must identify counsel's alleged acts or omissions that were not the result of reasonable, professional judgment considering the circumstances. *See Strickland*, 466 U.S. at 690; *United States v. Quintero–Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995), *cert. denied*, 519 U.S. 848 (1996). There is a strong presumption that counsel's performance fell within the wide range of professional assistance. *See Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689); *Bloom*, 132 F.3d at 1270; *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990). Judicial scrutiny of counsel's performance is highly deferential. *See Strickland*, 466 U.S. at 677–678; *Quintero–Barraza*, 78 F.3d at 1348; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, to demonstrate prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on

the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86 (2011). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694; *United States v. Leonti,* 326 F.3d 1111, 1120 (9th Cir.2003). In addition, the court can find prejudice only when the outcome would have been different without counsel's errors. *See Lockhart*, 506 U.S. at 369–370. A court must also evaluate whether the entire proceeding was fundamentally unfair or unreliable because of counsel's ineffectiveness. *Id.*; *Quintero–Barraza*, 78 F.3d at 1345; *United States v. Palomba*, 31 F.3d 1456, 1461 (9th Cir. 1994). A defendant may be granted a windfall, to which he is not entitled, if her conviction or sentence is set aside solely because the outcome may have been different but for counsel's errors. *See Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). Thus, if a court finds that counsel's performance fell below an objective standard of reasonableness, and that but for counsel's unprofessional errors, the result of the proceeding would have been different, the court must determine despite the errors and prejudice, whether the proceeding was fundamentally fair and reliable.

The prongs of the *Strickland* test may be evaluated out of order. *See Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002), *opinion amended and superseded in part*, 385 F.3d 1247 (9th Cir. 2004). A reviewing court "'need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Id.* (quoting *Strickland*, 466 U.S. at 697).

The *Strickland* standards apply to appellate counsel as well as trial counsel. *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). "To obtain relief from a claim of ineffective assistance of appellate counsel, an appellant must show that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that but for counsel's unprofessional errors, appellant would have prevailed on appeal." *United States v. David*, 39 F.3d 1189 (9th Cir. 1994). The relevant inquiry is not what counsel could

have done; rather, it is whether the choices made by counsel were reasonable. *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir.1998).

It is "recognized that the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal . . . ." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). And "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." *Id.* at 753. Nevertheless, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones*, 463 U.S. at 751-52; *see also Miller*, 882 F.2d at 1434 ("[T]he weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy."). "A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." *Jones*, 463 U.S. at 753 (internal citation and quotation omitted); *see also Miller*, 882 F.2d at 1434 ("[E]very weak issue in an appellate brief or argument detracts from the attention a judge can devote to the stronger issues, and reduces appellate counsel's credibility before the court. For these reasons, a lawyer who throws in every arguable point—'just in case'—is likely to serve her client less effectively than one who concentrates solely on the strong arguments.").

Thus, the Supreme Court has held that indigent defendants do not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones*, 463 U.S. at 751, 753-54; *see also Miller*, 882 F.2d at 1434, n. 10 (appellate counsel has no constitutional duty to raise every nonfrivolous issue requested by petitioner). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. . . . [I]t is still possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Smith*

*v. Robbins*, 528 U.S. 259, 288 (2000). "Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017); *see also Smith*, 528 U.S. at 288 (""Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.") (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). "Appellate counsel will . . . frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason—because she declined to raise a weak issue." *Miller*, 882 F.2d at 1434. Furthermore, "[i]n most cases, an unpreserved trial error will not be a plainly stronger ground for appeal than preserved errors." *Davila*, 137 S. Ct. at 2067. "Thus, in most instances in which the trial court did not rule on the alleged trial error (because it was not preserved), the prisoner could not make out a substantial claim of ineffective assistance of appellate counsel . . . ." *Id.* And, obviously, failing to appeal a meritless issue is not prejudicial and does not constitute ineffective assistance of counsel. *See, e.g., Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012); *United States v. David*, 39 F.3d 1189, *3-4 (9th Cir. 1994).

At least thirty of Petitioner's grounds for his § 2255 motion relate to the alleged ineffective assistance of appellate counsel by Katherine L. Hart and Barry L. Morris. The core of Petitioner's ineffective assistance of counsel grounds amounts to claims that his attorneys failed to raise arguments on appeal. *See* ECF No. 155 at 8 (Ground 1B), 14 (Ground 2D), 20 (Ground 3C), 37 (Ground 6B), 37 (Ground 7B), 65 (Ground 10D), 86 (Ground 13B), 119 (Ground 17B), 127 (Ground 19), 132 (Ground 20), 136 (Ground 21), 138 (Ground 22), 139 (Ground 23), 140 (Ground 24), 143 (Ground 25), 148 (Ground 27), 152 (Ground 28), 159 (Ground 30), 164 (Ground 31B), 165 (Ground 32B), 167 (Ground 33), 171 (Ground 34), 175 (Ground 35), 184 (Ground 37), 187 (Ground 38), 193 (Ground 39), 200 (Ground 41), 202 (Ground 42), 203 (Ground 43), 205 (Ground 44B).

The same analysis applies to all thirty of these ineffective assistance of counsel grounds because Petitioner wholly fails to establish either deficient performance or prejudice in any of them. The Court

has reviewed each of Mr. Hunt's ineffective assistance of appellate counsel claims, along with the declarations and exhibits provided by Petitioner's appointed appellate counsel, Ms. Hart and Mr. Morris, which are attached to the Government's opposition. As their declarations reveal, Ms. Hart and Mr. Morris made reasoned strategic decisions regarding which nonfrivolous issues they would address in the opening brief and reply brief, respectively. *See* ECF No. 175-1, Att. A & Att. B. Each worked with Petitioner and took his input seriously regarding non-frivolous issues, despite his uncooperative behavior. *Id.* The record as a whole reveals that Ms. Hart and Mr. Morris in fact went above and beyond their obligations to provide effective appellate counsel. Indeed, the declarations reveal that Ms. Hart and Mr. Morris considered and chose not to raise many of Petitioner's argument precisely because they are frivolous. *Id.* Petitioner has not shown that Ms. Hart or Mr. Morris's strategic decisions to not raise the various arguments presented in this § 2255 motion was anything but "selecting the most promising issues for review." *Jones,* 463 U.S. at 753.

Contrary to Mr. Hunt's argument, he did not establish that the arguments he claimed should have been raised were plainly stronger. *See Smith*, 528 U.S. at 288; *Davila*, 137 S. Ct. at 2067. The Court analyzes throughout this Order any potentially meritorious substantive claims underlying Petitioner's ineffective assistance grounds, and as this decision describes, the vast majority Petitioner's grounds lack legal and/or factual merit. *See, e.g.*, ECF No. 155 at 4, 14 (Ground 2D fails because it only vague and conclusory allegations of the Government fabricating evidence), 119 (Ground 17B fails because there was no failure to temporally align the elements in instructions), 127 (Ground 19A fails because Petitioner offers nothing beyond vague and allegations the Government violated his rights by listening in on his jail calls), 138 (Ground 22A fails because there was the Government was not required to certify its transcripts in the manner Petitioner claims was necessary), 156 (Ground 29A fails because *Elonis* did not invalidate the 1512 instruction), 165 (Ground 32B fails because it was not error to not *sua sponte* offer a 1512(e) instruction at trial), 187 (Ground 38 fails because there was no Speedy Trial Act violation), and 200 (Ground 41A fails because there is no evidence the trial transcripts were not

accurate).  Ineffective assistance of counsel grounds based on such meritless underlying substantive claims thus cannot constitute deficient performance, *i.e.*, falling below an objective standard, and cannot demonstrate prejudice, *i.e.*, a reasonable probability but for counsels' errors the result of the proceeding would have been difference.

And, to the extent Petitioner does identify errors, they are harmless.  *See, infra*, Section IV.E (denying Ground 1A because any constructive amendment by 1591(c) instruction harmless error).  Failure to raise errors that would not be successful on appeal does not fall below an objective standard reasonableness, and does not demonstrate a reasonable probability that the result of the proceeding would have been different.  Thus, Ms. Hart and Mr. Morris's decisions not to pursue these claims on appeal falls within "the "wide range of professionally competent assistance" required under the Sixth Amendment.  *Strickland,* 466 U.S. at 690.

Therefore, Petitioner does not show that either of *Strickland*'s prongs are met in any of his claims of ineffective assistance of appellate counsel.  Petitioner fails to show that Ms. Hart and Mr. Morris's representation fell below an objective standard of reasonableness and fails to show that but for Ms. Hart and Mr. Morris's alleged errors, Petitioner would have prevailed on appeal.  Petitioner's proceedings were fundamentally fair and reliable.  Petitioner's appellate counsel were not ineffective and Petitioner did not suffer prejudice on account of counsel's performance.  Petitioner's ineffective assistance of appellate counsel grounds, *see* ECF No. 155 at 8 (Ground 1B), 14 (Ground 2D), 20 (Ground 3C), 37 (Ground 6B), 37 (Ground 7B), 65 (Ground 10D), 86 (Ground 13B), 119 (Ground 17B), 127 (Ground 19), 132 (Ground 20), 136 (Ground 21), 138 (Ground 22), 139 (Ground 23), 140 (Ground 24), 143 (Ground 25), 148 (Ground 27), 152 (Ground 28), 159 (Ground 30), 164 (Ground 31B), 165 (Ground 32B), 167 (Ground 33), 171 (Ground 34), 175 (Ground 35), 184 (Ground 37), 187 (Ground 38), 193 (Ground 39), 200 (Ground 41), 202 (Ground 42), 203 (Ground 43), 205 (Ground 44B), are **DENIED**.

**D.    Use of *Modus Operendi* Theory on Appeal**

Several of Petitioner's grounds center on the argument that the Government and Ninth Circuit violated multiple constitutional rights during the direct appeal by presenting argument and affirming Petitioner's conviction, respectively, on the basis of sufficient evidence to support the element of "knowledge."  The Ninth Circuit found that Petitioner's use of force, fraud, or coercion caused the victim to engage in commercial sex acts via the *modus operendi* theory, even though a *modus operendi* theory never was alleged explicitly in the indictment nor provided to the jury in instructions or arguments.  *See* ECF No. 155 at 22 (Ground 4), 39 (Ground 8), 47 (Ground 9), 99 (Ground 16B).

The Ninth Circuit held in this case that, pursuant to *Todd*, 627 F.3d at 334, it is permissible to establish the knowledge element of § 1591 by evidence that Petitioner "knew 'in the sense of being aware of an established modus operandi that' would in the future cause the victim to engage in prostitution by force, fraud, or coercion."  *See Hunt*, 622 Fed. App'x at 657.  Thus, as noted in Section IV.B, Petitioner's claims substantively challenging the use of the *modus operendi* theory are foreclosed by the law of the case doctrine, as the Ninth's Circuit's ruling rejects these grounds by necessary implication.  And Petitioner also failed to raise these issues by filing a petition for rehearing before the Ninth Circuit, arguably procedurally defaulting on these issues.

Nevertheless, to the extent these claims are not barred by law of the case or procedural default, there is no merit to Petitioner's arguments.  It is true that "[a]n appellate court may not affirm a conviction on a legal or factual theory that was not presented to the jury."  *United States v. Knox*, 940 F.2d 1536, *5 (9th Cir. 1991) (reversing conviction where government claimed for the first time on appeal that defendant was convicted of aiding and abetting, rather than the predicate crime); *see also Sheppard v. Rees*, 909 F.2d 1234, 1237 (9th Cir. 1989) (government's request for felony murder jury instruction for the first time the morning of closings violated defendant's Sixth Amendment right to be notified of the charges against him, "permitting the jury to convict on a theory that was neither subject to adversarial testing, nor defined in advance of the proceeding," and depriving defendant of the right for

his counsel "know[] and ha[ve] a satisfactory opportunity to respond to the charges against which he or she must defend"); *McCormick v. United States*, 500 U.S. 257, 269 (1991) (error for Ninth Circuit to announce new legal rule and independently search the record to affirm the conviction on the basis of the new rule, rather than remanding for a new trial). However, the test for whether a theory is sufficiently different from that presented during trial is whether "the elements necessary to convict a defendant" differ between the legal/factual theory at trial, and that on appeal. *Knox*, 940 F. 2d at *5; *see also United States v. Tarallo*, 380 F.3d 1174, 1184 (9th Cir. 2004), amended, 413 F.3d 928 (9th Cir. 2005) ("Because the jury was not instructed that it had to find beyond a reasonable doubt all elements of coschemer vicarious liability, on appeal the government may not rely on this new theory.").

Here, the Ninth Circuit held that the evidence presented at trial was sufficient to establish beyond a reasonable doubt that the knowledge element of § 1591 was met because Petitioner "knew 'in the sense of being aware of an established modus operandi that' would in the future cause the victim to engage in prostitution by force, fraud, or coercion." *See Hunt*, 622 Fed. App'x 657. This case is almost identical to *Todd*, where, while "*modus operendi*" was not mentioned in the jury instruction or apparently at trial, the Ninth Circuit nevertheless held that "[t]he evidence of Todd's knowledge of his own modus operandi in securing an income from prostitution by a pattern of coercion was sufficient to support the jury's verdict." *Todd*, 627 F.3d at 334 ("The knowledge required of the defendant is such that if things go as he has planned, force, fraud or coercion will be employed to cause his victim to engage in a commercial sex transaction. That required knowledge brings the predictable use of force, fraud, or coercion into the definition of the defendant's crime."); *see also United States v. Bazar*, 747 F. App'x 454, 457 (9th Cir. 2018) (affirming § 1591 sex-trafficking-by-fraud conviction on basis that there was sufficient evidence defendant was aware of an established *modus operandi* of fraud that would cause his victims to engage in commercial sex acts) (internal quotations omitted), *cert. denied*, No. 18-7649, 2019 WL 416283 (U.S. Mar. 4, 2019). There was no error in the Ninth Circuit affirming Petitioner's conviction via a *modus operendi* theory.

None of the cases cited by Petitioner to support error in these grounds hold that constitutional rights were violated when convictions were affirmed on a theory not presented at trial. Rather, in each of the three cases, the court held that the government failed to produce sufficient evidence of a specific element. *See Stirone v. United States*, 361 U.S. 212, 218 (1960) (holding that when only one particular kind of interstate commerce burden is charged in an indictment, "a conviction must rest on that charge . . . ."); *United States v. Rodriguez*, 790 F.3d 951, 960 (9th Cir. 2015) (ruling that intentionally shining a laser at a helicopter "is not, in and of itself, sufficient to allow a rational factfinder to conclude that [a defendant] acted with reckless disregard for the safety of human life."); *United States v. Barone*, 71 F.3d 1442, 1447 (9th Cir. 1995) (holding that issuing false checks by a shell corporation to other corporations that engage in interstate commerce is insufficient to meet statute's requirement that the company issuing the false check itself engage in interstate commerce).

Just as in *Todd*, the same § 1591 element of "knowledge" was at issue at trial and on appeal, and the Ninth Circuit applied established precedent—not a novel legal test—in holding the evidence sufficient to support the jury's finding of knowledge.[4] Petitioner did not seek an *en banc* rehearing on

---

[4] Petitioner argues in supplemental briefing that *Todd* does not address the 2008 amendments to §1591(a), and implies that these amendments would have changed the result in *Todd* and change the result in this case. *See* ECF No. 190 at 4; *see also United States v. Pepe*, 895 F.3d 679, 686 (9th Cir. 2018) ("If our case law interpreting a statute is clearly irreconcilable with the text and history of subsequent legislation, we are not bound by the decisions of prior panels."); *United States v. McNeil*, 362 F.3d 570, 574 (9th Cir. 2004) ("[W]hen Congress amends statutes, our decisions that rely on the older versions of the statutes must be reevaluated in light of the amended statute."). Petitioner is correct that *Todd* was decided pursuant to the pre-2008 version of § 1591. *See Todd*, 627 F. 3d at (quoting from statutory language that was modified by 2008 amendments). Indeed, the statute has been amended four times since *Todd* was decided. However, *Todd* is not "clearly irreconcilable with the text and history of subsequent legislation." *Pepe*, 895 F.3d at 686. There is no reason to think that the 2008 amendments would have changed the result in *Todd*. The 2008 amendments revised several aspects of the statute, most relevant here adding the following italicized language: "knowing, *or in reckless disregard of the fact,* that means of force, threats of force, fraud, coercion described in subsection (e)(2), *or any combination of such means* will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)." *Compare* 18 U.S.C. § 1591(a) (West 2008) (emphasis added) *with* 18 U.S.C § 1591(a) (West 2006). Thus, in terms of *mens rea*, adding "reckless disregard" is the main change relevant to Petitioner's argument. But *Todd* found evidence of a *modus operandi* sufficient to support a jury's finding of a defendant's knowledge that force/fraud/coercion would be used, proving "reckless disregard" requires a lower threshold than "knowledge," and thus the amendments would not have affected *Todd*'s *modus operandi* analysis as pertains to knowledge. Indeed, it stands to reason that evidence establishing *modus operandi* would be more than sufficient to establish a defendant's reckless disregard that force/fraud/coercion would be used. *See Todd*, 627 F. 3d at 334; *Hunt*, 622 Fed. App'x at 657. The remaining 2008 amendments, and amendments since, likewise do not change the result. *See* PL 110–457, December 23, 2008, 122 Stat 5044; PL 114-22, May 29, 2015, 129 Stat 227; PL 115-164, April 11, 2018, 132 Stat 1253; PL 115-392, December 21, 2018, 132 Stat 5250.

1  this decision.  Petitioner's rights were not violated by the Ninth Circuit affirming his conviction on the

2  basis of the sufficiency of trial evidence establishing knowledge via an established *modus operandi*.

3  Therefore, these grounds – *See* ECF No. 155 at 22 (Ground 4), 39 (Ground 8), 47 (Ground 9), 99

4  (Ground 16B) – are **DENIED**.

5  **E.**      **Constructive Amendment of the Indictment**

6          Petitioner brings several claims that the indictment was constructively amended.  *See* ECF

7  No. 155 at 4, 7 (Ground 1A), 4, 9 (Ground 2B), 4, 14 (Ground 3A), 32 (Ground 7A), 121 (Ground 18).

8  "A defendant in a felony trial can only be convicted of charges upon which a grand jury has returned an

9  indictment."  *United States v. Arreola*, 467 F.3d 1153, 1162 (9th Cir. 2006).  "It is the exclusive

10  prerogative of the grand jury finally to determine the charges, and once it has done so neither a

11  prosecutor nor a judge can change the charging part of an indictment to suit [his or her] own notions of

12  what it ought to have been, or what the grand jury would probably have made it if their attention had

13  been called to suggested changes."  *United States v. Leichtnam*, 948 F.2d 370, 375–76 (7th Cir. 1991)

14  (quoting *Ex parte Bain*, 121 U.S. 1, 10 (1887)) (alteration in original) (internal quotation marks

15  omitted); *see also United States v. Miller*, 471 U.S. 130, 138 (1985); *Stirone*, 361 U.S. at 216.

16          "An amendment of the indictment occurs when the charging terms of the indictment are altered,

17  either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them."

18  *Jingles*, 702 F.3d at 500 (quoting *United States v. Von Stoll*, 726 F.2d 584 (9th Cir. 1984)).  An

19  indictment is constructively amended where "the evidence presented at trial, together with the jury

20  instructions, raises the possibility that the defendant was convicted of an offense other than that charged

21  in the indictment."  *United States v. Streit*, 962 F.2d 894, 899-900 (9th Cir. 1992).  "A variance involves

22  a divergence between the allegations set forth in the indictment and the proof offered at trial."  *United*

23  *States v. Ward*, 747 F.3d 1184, 1189-1190 (9th Cir. 2014).  Put another way, a variance occurs "when

24  the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts

25  materially different from those alleged in the indictment."  *Jingles*, 702 F.3d at 500. The terms

"variance" and "amendment" "can, and often do, mean the same thing." *Id.*; *see also United States v. Davis*, 854 F.3d 601, 603 (9th Cir. 2017) ("There are two types of constructive amendment: first, where 'there is a complex of facts [presented at trial] distinctly different from those set forth in the charging instrument,' and, second, where 'the crime charged [in the indictment] was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved.'") (quoting *United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002)).

The superseding indictment in this case was filed on June 27, 2013. *See* ECF No. 25. At threshold, Petitioner generally refused to participate in the jury instruction process at trial, *see* ECF No. 175 at 5.[5] Petitioner did not submit jury instructions on the issues he now raises and did not object to the Government's proposed or revised jury instructions. Petitioner thus failed to preserve any objections to the instructions given. Moreover, as noted above, Petitioner could have raised nearly all of these claims before the Ninth Circuit and Supreme Court and has not attempted to establish cause nor prejudice to excuse his procedural default. *See Frady*, 456 U.S. at 165; *Dunham*, 767 F.2d at 1397; *Bousley*, 523 U.S. at 622; *Braswell*, 501 F.3d at 1149, 1150 n. 1; *Brecht*, 507 U.S. at 637; *see also See* Fed. R. Crim. Proc. 30(a), (e) ("A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate. . . . Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b)."), 52(b) ("[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

Nevertheless, assuming these claims were neither procedurally defaulted nor otherwise waived,

---

[5] Petitioner's third appointed counsel prior to trial, Gary Huss, filed proposed jury instructions on July 19, 2013, and both parties filed joint jury instructions on July 29, 2013, prior to Mr. Huss's dismissal from representing petitioner on August 5, 2013. *See* ECF Nos. 33, 50, 59. The proposed jury instructions did not address the § 1591(c) issue, but the joint instructions included the § 1591(c) exception. *See* ECF No. 50 at 23. The Government later filed amended jury instructions, seeking a revised instruction providing the elements of § 1591, because "prior to his becoming pro per, the government was in discussion with Mr. Hunt's prior attorney. The government believes the revised version more directly comports with 18 U.S.C. § 1591." *See* ECF No. 67 at 1. This revised version was the instruction ultimately given. *See* ECF No. 117 at 33-34. None of the three iterations of the jury instructions request any of the instructions Petitioner now argues should have been included. *See* ECF Nos. 33, 50, 59. Petitioner did not file objections or disputes as to any of the jury instructions.

22

Petitioner's Ground 1A is the only ground alleging constructive amendment that both may not have been procedurally defaulted,[6] and may have merit. *See* ECF No. 155 at 4, 7. Ground 1A argues that instructing the jury on § 1591(c)'s exception that the Government need not prove the Petitioner knew or recklessly disregarded that the victim was not yet 18 years old if the defendant had a "reasonable opportunity to observe" constructively amended the indictment, because the superseding indictment only alleged under § 1591(a)(1) that Petitioner knew or recklessly disregarded the victim had not attained the age of 18 years. *Id.*

In *United States v. Davis*, the Ninth Circuit held that a nearly identical jury instruction as that given in this case constructively amended the indictment by including § 1591(c)'s "reasonable opportunity to observe" language in the jury instructions, but not in the indictment. *Compare* 854 F.3d at 604-6 *with* ECF No. 25 at 1 (superseding indictment, omitting "reasonable opportunity to observe" language) & ECF No. 118 at 33-34 (jury instructions on "reasonable opportunity to observe");[7] *see also United States v. Bolds*, 620 F. App'x 592, 593 (9th Cir. 2015) ("Because we do not know which instructions the jury relied on when it convicted Bolds, and because it is impossible to know whether the grand jury would have charged Bolds on the "reasonable opportunity to observe" theory, the jury instructions constructively amended the indictment."); *United States v. Lockhart*, 844 F.3d 501, 516 (5th Cir. 2016) (holding instructing jury on § 1591's "reasonable opportunity to observe," when it was not included in the indictment, constructively amended the indictment); *United States v. Curry*, 723 F. App'x 314, 320 n.1 (6th Cir.), *cert. denied*, 139 S. Ct. 346 (2018) (noting in dicta, and citing *Lockhart*, the potential for constructive amendment if the jury is instructed as to the "reasonable opportunity to observe" element, in a case indicted on knowledge/reckless disregard).

---

[6] Petitioner also raises this argument in terms of ineffective of assistance of counsel, which would be sufficient to excuse a procedural default. *See* ECF No. 155 at 8 (Ground 1B); *see also Massaro*, 538 U.S. at 504-5, 509; *see also De la Fuente*, 8 F.3d at 1337; *Ratigan*, 351 F.3d at 964–65. As the Court ultimately finds the underlying substantive claim to be harmless error, as previously found in this order, there was no ineffective assistance of counsel as to this ground.

[7] All transcript page citations in this decision are to the ECF document page number, rather than the internal transcript's pagination.

Therefore, pursuant to *Davis*, the "reasonable opportunity to observe" jury instruction constructively amended the indictment. The jury made a single finding combined finding regarding §1591(a)'s element of knowledge of the victim's age and that the victim would be caused to engage in commercial sex acts. *See* ECF No. 76 at 1. It is not possible to separate out whether they made this finding on the basis of "knowing that S.G. had not attained the age of 18 years, or recklessly disregarded the fact, . . . and that S.G, would be caused to engage in a commercial sex act" or if they made the finding on the basis of Petitioner's "reasonable opportunity to observe" the victim and knowing she would engage in a commercial sex act. *See id.*

Nevertheless, any such error was harmless because the jury also expressly found the Government proved beyond a reasonable doubt the statute's predicate alternative to knowledge the victim was under the age of 18/"reasonable opportunity to observe," *i.e.*, that Petitioner "knowingly, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion, or any combination of such means would be used to cause S.G. to engage in a commercial sex act." ECF No. 76 at 1. The jury instructions and verdict form match the superseding indictment nearly word-for-word as to this separate, predicate element. *Compare* ECF No. 118 at 33-4 and ECF No. 76 at 1 *with* ECF No. 25 at 1. And there was more than enough evidence presented at trial for the jury to make such a finding. Therefore, even if the indictment was constructively amended by allowing the jury to convict on the basis of § 1591(c)'s "reasonable opportunity to observe," it cannot be said the error had a "substantial and injurious effect" on the jury's verdict, because there is an independent predicate jury finding for Petitioner's § 1591(a) conviction, supported by overwhelming evidence. *See Montalvo*, 331 F.3d at 1058; *see also Hedgpeth v. Pulido*, 555 U.S. 57, 58, 60-62 (jury instructions providing alternative theories, one valid and one invalid, subject to *Brecht* harmless error review).

As described below, Petitioner's remaining complaints regarding constructive amendment are meritless, assuming again that Petitioner's failures to object or appeal and any procedural default could be cured. None of the remaining arguments demonstrates any error, much less a constructive indictment

that "raises the possibility that the defendant was convicted of an offense other than that charged in the indictment." *See Streit*, 962 F.2d at 899-900; *Jingles*, 702 F.3d at 500.

- Ground 2B argues that the Government constructively amended the indictment because the evidence at trial, as affirmed by the Ninth Circuit, only established the interstate commerce element on October 14-16, 2011, but the indictment alleged conduct occurring October 9-17, 2011. ECF No. 155 at 4, 9; ECF No. 25 at 1. Petitioner claims that because Petitioner's actions did not fall under the federal criminal statute's jurisdictional hook until October 14th, permitting the jury to consider evidence of Petitioner's illegal actions during the October 9-13 constructively amended the indictment. The superseding indictment alleges that "beginning on or about October 9, 2011, and continuing through on or about October 17, 2011 . . . [Petitioner violated § 1591]." ECF No. 25 at 1. The jury was instructed that "[t]he superseding indictment charges that the offense was committed on or about a specific date. The government does not have to prove that the crime or crimes was or were committed on the exact dates, so long as the defendant committed the crime on a date reasonably near the date stated in the superseding indictment." ECF No. 118 at 37.

There is no error in giving an "on or about" instruction and the operative dates proven at trial did not otherwise constructively amend the indictment. *See United States v. Loya*, 807 F.2d 1483, 1494 (9th Cir. 1987) ("The government's evidence established that the events occurred on a day reasonably near the date alleged. Appellants failed to request an instruction on alibi. Under these circumstances, the challenged instruction did not affect the fundamental fairness of the trial."). Moreover, there was substantial evidence that the acts for which Petitioner was convicted affected interstate commerce within the range alleged in the superseding indictment, much less within a few days of the superseding indictment's date range. *See* ECF Nos. 116 at 130, 135-36, 169-71 (victim taken to health clinic and provided condoms manufactured outside of California on October 14, 2011), 157-8, 164-5 (victim

stayed at motel that used interstate bank on October 14-15, 2011); *see also Hunt*, 622 Fed. App'x at 657 ("[t]he government produced evidence that Hunt took the victim to a motel that serves out-of-state customers and does its banking with an institution with locations in nineteen states."). Thus, the dates alleged in the superseding indictment align with what was proven at trial, and there was no constructive amendment of the indictment in this regard, much less any error creating a "possibility that the defendant was convicted of an offense other than that charged in the indictment." *See Streit*, 962 F.2d at 899-900.

- Ground 3A argues that the use of Natalie Kelly's acts – specifically her booking of the Bakersfield Lodge – to establish that Petitioner's acts were "in or affecting interstate commerce" constructively amended the indictment because there was no allegation in the indictment that Petitioner "aided and abetted" or "conspired" with Ms. Kelly. *See* ECF No. 155 at 4, 15. Petitioner was neither charged nor convicted of aiding and abetting nor conspiracy, therefore it was not necessary for the indictment to specifically allege Ms. Kelly's involvement. The indictment properly charged that Petitioner "in and affecting interstate commerce, did knowingly recruit, entice, harbor, transport, provide, obtain, and maintain by any means, a person . . . ." ECF No. 25 at 1. Among other acts that met this element that are described above, Ms. Kelly's testimony established that Petitioner made the decision for everyone to go to Bakersfield, and the booking of the motel room was at his direction and part of Petitioner's recruitment, enticement, harboring, transporting, providing, or maintaining the victim. *See* ECF No. 116 at 180-83; 18 U.SC. § 1591(a)(1). This was not an aiding and abetting or conspiracy case. There was substantial evidence supporting the interstate commerce element in multiple different ways, and therefore the indictment was not constructively amended by reliance on these acts. And, even if the Court assumes for argument's sake that permitting Ms. Kelly's testimony regarding the booking of the room was somehow error, there was more than enough other evidence presented to establish the

interstate commerce element. There is no "possibility that the defendant was convicted of an offense other than that charged in the indictment" on the basis of this argument. *See Streit*, 962 F.2d at 899-900.

- Ground 7A claims the indictment was constructively amended by the Government using acts by individuals other than Petitioner to establish the interstate commerce element. *See* ECF No. 155 at 32. As discussed throughout this decision, and held by the Ninth Circuit already, there was more than sufficient evidence presented at trial that Petitioner caused an effect on interstate commerce, as alleged in the superseding indictment. *See also Hunt*, 622 Fed. App'x at 657. This Ground does not raise any "possibility that the defendant was convicted of an offense other than that charged in the indictment" on the basis of this argument. *See Streit*, 962 F.2d at 899-900.

- Ground 18 claims that the use of "prostitution" by the Government instead of "commercial sex act" in presenting evidence and in closing arguments constructively amended the indictment. *See* ECF No. 155 at 121. §1591(e)(3) defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." This was the exact definition used in jury instructions. ECF No. 118 at 34. The Government also used this definition in its closing argument. *See id.* at 54-55. At threshold, Petitioner's attempts at differentiating "commercial sex act" and "prostitution," and demonstrating how he was prejudiced by the use of the term "prostitution," are nonsensical. *See* ECF No. 155 at 121-26. And, in any event, there is no error here, much less any prejudice to Petitioner by the Government's use of the word "prostitution." The jury instructions and verdict form used the statutory "commercial sex act." *See* ECF Nos. 76, 118 at 33-34. Moreover, the Government, while using the word "prostitution" in closing, also made clear that a "commercial sex act" was required and defined it. *See* ECF No. 118 at 41, 43-44, 47, 54-56, 71. And the evidence presented at trial is sufficient to demonstrate the victim engaged in statutory commercial sex

acts due to Petitioner's force/fraud/coercion. *See, e.g.*, ECF No. 115 at 181-86, 206-8 . The case law cited by Petitioner does not change the result. *See Depasquale v. Gonzales*, 196 F. App'x 580, 581 (9th Cir. 2006) (state statute's definition of "prostitution" was broader than federal immigration statute's definition, and thus a state conviction for prostitution did not categorically fall within the federal definition); *United States v. Taylor*, 640 F.3d 255, 260 (7th Cir. 2011) (holding statute's use of "sexual activity" should be interpreted to mean the same as "sexual act" in a related section, the latter of which being defined in a way that excluded defendant's conduct). The Government's use of the term "prostitution" during closing arguments did not constructively amend the indictment and did not create any "possibility that the defendant was convicted of an offense other than that charged in the indictment." *See Streit*, 962 F.2d at 899-900

Therefore, Petitioner's grounds alleging constructive amendment of the indictment – *See* ECF No. 155 at 4, 7 (Ground 1A), 4, 9 (Ground 2B), 4, 15 (Ground 3A), 32 (Ground 7A), 121 (Ground 18) – are **DENIED**.

**F.     Remaining Grounds Regarding Jury Instructions**

Petitioner raises several other grounds regarding the jury instructions. *See* ECF No. 155 at 76 (Ground 11B), 84 (Ground 13A), 93 (Ground 15), 101 (Ground 17A), 165 (Ground 32A), 179 (Ground 36). The Court again notes most, if not all, of the faults Petitioner finds with the jury instructions were a direct result of his refusal to participate in the jury instruction process and trial. Moreover, almost all of these claims could have been raised on direct appeal and are arguably procedurally defaulted. *See Frady*, 456 U.S. at 165; *Dunham*, 767 F.2d at 1397; *Bousley*, 523 U.S. at 622; *Braswell*, 501 F.3d at 1150 n. 1; *Brecht*, 507 U.S. at 637; *see also See* Fed. R. Crim. Proc. 30(a), (e), 52(b).

"It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). The "reviewing court finding such error should ask whether the flaw in the instructions 'had substantial

and injurious effect or influence in determining the jury's verdict.'" *Hedgpeth*, 555 U.S. at 58 (quoting *Brecht*, 507 U.S. at 623) (internal quotation marks omitted); *see also Henderson*, 431 U.S. at 154 ("The question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process' . . . not merely whether 'the instruction is undesirable, erroneous, or even 'universally condemned . . . .'") (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-7 (1973)) (internal quotation marks and citations omitted). Moreover, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 555 U.S. at 155.

"[T]he degree of prejudice resulting from instruction error [must] be evaluated in the total context of the events at trial. . . . '[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.' . . . Moreover, 'a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction.'" *Frady*, 456 U.S. at 169 (quoting *Cupp*, 414 U.S. at 146-7).

As noted above, Petitioner's proposed and joint instructions submitted by counsel did not raise any of the faults Petitioner now finds in the jury instructions, and, once *pro* se, Petitioner did not object to nor file disputed instructions at trial. Petitioner chose to not participate in the instruction conference, and generally refused to participate in the instruction process. Assuming for argument's sake these grounds were not procedurally defaulted or waived, none of Petitioner's remaining claims regarding the jury instructions have any merit as described below:

- Ground 11B and Petitioner's supplemental briefing argue that the Ninth Circuit erred in affirming his conviction under a *Todd modus operandi* theory when the trial judge did not instruct the jury on the limited purposes for which they could consider other acts evidence.

*See* ECF No. 155 at 76; ECF No. 192 at 1.  Under Federal Rule of Evidence 404(b), evidence of crimes, wrongs, or other acts are admissible for purposes of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Petitioner's argument fails for a number of reasons.

First, Petitioner fails to state what specific evidence of other bad acts was admitted erroneously.  Petitioner implies the "other acts" were introduced for an improper purpose by the Government's argument in closing regarding "the clear effect" Petitioner had on two witnesses, and his "ability to twist them and turn them into knots."  *See* ECF No. 118 at 66-68.  These statements plainly related to the obstruction and witness tampering charges. Moreover, these statements do not convey any inadmissible facts regarding Petitioner's other acts, much less prior criminal convictions or other bad acts, and only references what the jury saw in court, during live testimony.

Second, Petitioner complains he was not given notice of the other bad acts evidence to be admitted, but ignores that it was his burden at trial to request reasonable notice of any such bad acts evidence.  *See* Fed R. Evid. 404(b)(2)(A).

Third, *United States v. Mayans* and *United States v. Ray*, cited by Petitioner, are distinguishable.  *See United States v. Mayans*, 17 F.3d 1174, 1183 (9th Cir. 1994) (upon a pre-trial request from a defendant for Fed. R. Evid. 404(b)(2)(A)'s notice of the other acts evidence prosecutor intends to offer, it was error for the judge to not require from the government more specific information on the facts of the prior bad acts sufficient to demonstrate a logical connection between the prior bad act and the material fact at issue, and that the error was compounded when the prior criminal acts were admitted both for knowledge/intent and to prove an overt act); *United States v. Ray*, 741 F. App'x 452, 453-54 (9th Cir. 2018).  Unlike in *Mayans*, here there was no pre-trial request for Fed. R. Evid. 404(b)(2)(A) notice, there was no objection at trial, there was no improper admission of facts

underlying a previous conviction, and there was no conflation between evidence admitted to show intent or knowledge and evidence admitted to directly establish an element of a crime. Finally, Petitioner ignores the premise of the Government's appellate argument implicitly accepted by the Ninth Circuit's opinion in this case: A *modus operandi* can be established by prior acts of using force, threats of force, fraud, coercion with other victims, *or* by a pattern of acts with the victim in the case at issue. *See U.S. v. Hunt*, Case No. 13-10583 (9th Cir.), ECF No. 99-1 at 38-42. The latter is exactly what the evidence at trial was sufficient to prove, and what the Government argued in closing: Petitioner repeatedly used force, threats of force, fraud, coercion with this victim to cause her to engage in commercial sex acts. *See, e.g.*, ECF No. 115 at 183-91, 193-201, 204-9, No. 118 at 44-51. The absence of an "other acts" instruction did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Hedgpeth*, 555 U.S. at 5.

*Ray* is similarly distinguishable. In *United States v. Ray*, the Ninth Circuit held that Fed. R. of Evid. 404(b) was violated by the introduction of the underlying facts of a prior conviction that were highlighted in closing. 741 F. App'x at 453-54.[8] There, the prosecutor argued in closing that the defendant "used coercion, and force, and threats of force previously. This is the defendant's MO. This is what he does. He is a pimp, and he uses force or other techniques to keep the girls working for him in line." *Id.* The court rejected the government's argument that *Todd* required this evidence and argument, holding that "[e]ven

---

[8] *Ray* was not published and under Ninth Circuit Rule 36-3(a) is "not precedent." Nevertheless, the Court considers Petitioner's argument to the extent future Ninth Circuit opinions rule in line with *Ray,* 741 F. App'x at 452. *See* Ninth Circuit Rule 36-3(b) ("Unpublished dispositions and orders of this Court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1."); Fed. R. App. Proc. 32.1(a) ("A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like; and (ii) issued on or after January 1, 2007."), Cmt ("Rule 32.1 is extremely limited. . . . It says nothing about what effect a court must give to one of its unpublished opinions or to the unpublished opinions of another court. Rule 32.1 addresses only the citation of federal judicial dispositions that have been designated as 'unpublished' or 'non-precedential' – whether or not those dispositions have been published in some way or are precedential in some sense.").

in prosecutions under 18 U.S.C. § 1591(a), the government cannot rely on evidence for propensity's sake or otherwise argue that a jury can infer that a defendant performed certain acts because he or she has a prior conviction for similar conduct." *Id.* at 454. Nevertheless, the court held that any error in admitting the facts underlying the prior conviction was harmless due to "ample other evidence." *Id.* Once again, here, unlike in *Ray*, the Government did not introduce the facts underlying prior convictions, or otherwise rely on evidence for propensity's sake or argue that the jury could infer the Petitioner performed certain acts violating § 1591 because of prior convictions. Petitioner does not specify what exact facts underlying prior convictions were introduced. Indeed, the only person who mentioned Petitioner's prior criminal convictions was Petitioner during his opening argument. *See* ECF No. 115 at 152. The Government simply did not argue anything in closing that approximates the violative argumentation and evidence in *Ray* and *Mayans*.

- Ground 13A argues that the jury instruction for "coercion" improperly omitted the correct definition of the phrase "serious harm" in § 1591(a)(1)(e)(4). *See* ECF No. 155 at 84. Petitioner is correct that the jury instructions omitted a definition of "serious harm." § 1591(a)(1)(e)(4) defines "serious harm" as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." The statute's definition is broad, and indeed there was sufficient evidence presented at trial that the victim in this case suffered every kind of serious harm contemplated by the statute, *i.e.* "physical or nonphysical, including psychological, financial, or reputational harm" that was "sufficiently serious . . . to compel a reasonable person of the same background and in the same circumstances to perform or continue performing commercial sexual activity in order to avoid incurring that harm." 18 U.S.C.

32

§ 1591(a)(1)(e)(4); *see also* ECF No. 175 at 17-18 (citing to testimony establishing serious harm inflicted by Petitioner upon the victim). Viewing the trial in its "total context," *Frady*, 456 U.S. at 169, there is no chance the jury incorrectly convicted petitioner based on non-serious harms to the victim, or harms otherwise insufficient to compel a reasonable person to engage in commercial sex acts, and the omission of a definition of "serious harm" cannot be said to have "had substantial and injurious effect or influence in determining the jury's verdict." *Hedgpeth*, 555 U.S. at 5.

- Ground 15 argues that the jury instruction for "reckless disregard" did not include the legal definition and permitted jurors to rely on the common definition. *See* ECF No. 155 at 93. § 1591 does not define "reckless disregard." Again, looking at the total context, there was more than sufficient evidence for the jury to find that Petitioner *knew* that "force, threats of force, fraud, [and] coercion . . ." would be used to cause the victim to engage in a commercial sex act, just as the Ninth Circuit has already found, *see Hunt*, 622 Fed. App'x at 657, which is more than sufficient evidence Petitioner himself recklessly disregarded these facts. Moreover, the Government's closing argument discussed the meaning of "reckless disregard." *See* ECF No. 118 at 53-54. There is no chance that omission of the definition of "reckless disregard" from the jury instructions "had substantial and injurious effect or influence in determining the jury's verdict." *Hedgpeth*, 555 U.S. at 5.

- Ground 16A argues that the jury instructions should have included the *Todd* definition of "knowing." *See* ECF No. 155 at 96. The jury was instructed as to the definition of "knowingly," and the concept was discussed throughout closing arguments. *See, e.g.,* ECF No. 118 at 37-38 ("An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake or accident. The government is not required to prove that the defendant knew that his acts were unlawful. You may consider evidence of the defendant's words, acts or omissions, along with all of the other evidence, in deciding whether the

defendant acted knowingly.").  As already discussed in this Order, *Todd* did not establish a novel legal test for knowledge.  Rather, in *Todd* the Ninth Circuit simply applied established precedent.  The knowledge instruction given is entirely consistent with and encompasses the *Todd modus operandi* definition of knowledge.  Thus, again, the record taken as a whole demonstrates that any error assumed for argument's sake in not including the *Todd* definition did not have a "substantial and injurious effect or influence in determining the jury's verdict," *Hedgpeth*, 555 U.S. at 5, and was harmless.

- Ground 17A argues that the District Court should have instructed the jury that the elements of § 1591(a)(1) must "temporally align."  *See* ECF No. 155 at 101.  Similarly, Ground 36 argues that the District Court should have instructed the jury at trial that the elements of §§ 1503 and 1512(b)(1) must temporally align.  *See id.* 155 at 179.  Petitioner cites *United States v. Marcus*, a Second Circuit case noting in dicta that the Government should ensure the jury's instructions on § 1591 should make clear the elements of knowing "force/fraud/coercion" and knowing "recruitment, enticement, harboring, or transport" are temporally aligned.  *See* 538 F.3d 97 (2d Cir. 2008), *rev'd on other grounds,* 560 U.S. 258 (2010).[9]  Here, for the § 1591 charge, the jury instructions were phrased in a way to require the jury to first find that the defendant recruited, enticed, harbored, transported, provided, or obtained the victim, and then second find that "the defendant did so either [meeting one of two definitions of knowledge]."  *See* ECF No. 118 at 33.  Thus the § 1591 instructions made clear that the *mens rea* and act must coincide.  Similarly, the §§ 1503 and 1512 instructions, while not specifically using the phrase temporal alignment, were more than sufficient to make clear that the knowledge element must coincide with the act.  *See id.* at 34-37.  All of

---

[9] Petitioner also cites *United States v. Naughton*, 621 F. App'x 170 (4th Cir. 2015), but this unpublished, out-of-circuit, case does not expressly discuss or rule on temporal alignment of elements of a crime, and Petitioner does not otherwise explain how *Naughton* supports his argument.

the instructions made clear the necessary temporal relationship between the elements of each crime, *i.e.*, that the culpable mental states accompanies and coincides with the wrongful acts. *See Morissette v. United States*, 342 U.S. 246, 250-52 (1952). And, even if the Court assumes for argument's sake that a separate, specific instruction on temporal alignment would have been appropriate, considering the trial in its entire context, there is no probability that a lack of temporal alignment instruction had a "substantial and injurious effect or influence in determining the jury's verdict." *Hedgpeth*, 555 U.S. at 5.

- Ground 32A argues that the Court was required to *sua sponte* instruct the jury as to the affirmative defense of §1512(e) ("In a prosecution for an offense under this section, it is an affirmative defense, as to which the defendant has the burden of proof by a preponderance of the evidence, that the conduct consisted solely of lawful conduct and that the defendant's sole intention was to encourage, induce, or cause the other person to testify truthfully."). *See* ECF No. 155 at 165. The Court is not required to *sua sponte* provide an affirmative defense instruction that was neither requested nor relied upon at trial, particularly when it lacks a reasonable legal and factual basis. *Compare United States v. Montgomery*, 150 F.3d 983, 996 (9th Cir. 1998) ("Where a defendant does not offer a particular instruction, and does not rely on the theory of defense embodied in that instruction at trial, the district court's failure to offer an instruction on that theory *sua sponte* is not plain error.") *with United States v. Bear*, 439 F.3d 565, 569 (9th Cir. 2006) (plain error for court to not *sua sponte* instruct jury as to affirmative defense where "actually present[ed] and relie[d] upon" at trial, *i.e.* the defense was emphasized during witness examinations, both parties devoted portions of closing argument to addressing the defense, and the record would have supported a jury finding that the affirmative defense was met); *United States v. Williams*, 666 F. App'x 186, 202 (3d Cir. 2016) (While "[i]n general a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor . . .

35

trial courts generally are under no duty to raise affirmative defenses on behalf of a criminal defendant. Indeed, by raising affirmative defenses *sua sponte*, a trial court might actually harm a criminal defendant by undermining defense counsel's strategic decisions.") (internal quotations and citations omitted); *United States v. Sparks*, 791 F.3d 1188, 1193 (10th Cir. 2015) (no error in failing to *sua sponte* give § 1512(e) defense where record demonstrates there would have been insufficient evidence to establish the affirmative defense).

Petitioner did not request the instruction and barely referenced the theory of defense at trial; therefore, there was no reason for this Court to *sua sponte* instruct the jury as to a § 1512(e) affirmative defense. Petitioner did, on examination, elicit testimony from Ms. Sanchez that Petitioner never told her "don't come to court" and never told her "don't participate in the court process." *See* ECF No. 116 at 78. But viewing the trial in its entire context, the record does not support a finding that Petitioner was entitled to a *sua sponte* § 1512(e) instruction and the record further indicates it is unlikely Petitioner suffered any prejudice from the lack of the § 1512(e) instruction. Petitioner did not demonstrate an intent to rely on a § 1512(e) defense via requested jury instructions, objections to jury instructions, opening argument, questioning of witnesses beyond the sole arguable example above, nor closing argument. And Ms. Sanchez's testimony that she was never told to not come to court or participate in trial were contradicted by her own statements on direct examination and recorded jail calls. *See, e.g.*, ECF No. 116 at 65-66, 183-85, 238, 242-43; No. 117 at 21, 30-31. Moreover, the jury was instructed, and the Government argued in closing, that § 1512(b)(1) itself requires that a defendant use intimidation, physical force, or corrupt persuasion or attempt to do so, with the intent to influence, delay, or prevent the testimony of that person in an official proceeding. *See* ECF No. 118 at 35-36, 66-67. There was more than sufficient evidence, as the Ninth Circuit held, "to allow a rational juror to conclude that Hunt encouraged Sanchez to testify falsely and attempted to intimidate Kelly into not

36

testifying." *Hunt*, 622 Fed App'x at 658. Such evidence and a finding by the jury implicitly precludes the notion that Petitioner could have established that his sole intention was to encourage, induce, or cause Ms. Sanchez and Ms. Kelly to testify truthfully. Thus, there was no basis for the Court to *sua sponte* instruct on § 1512(e) and, even if it is assumed for argument's sake that a § 1512(e) instruction could have been appropriate, there is no reason to think its absence "had substantial and injurious effect or influence in determining the jury's verdict." *Hedgpeth*, 555 U.S. at 5.[10]

Ultimately, Petitioner complains of alleged defects in jury instructions which he could have raised, had he decided to complete participation in his own trial. Petitioner has not identified any misstatements of the law to the jury. Petitioner complains mostly of omissions which are inherently "less likely to be prejudicial than a misstatement of the law." *Henderson*, 555 U.S. at 155. Assuming for the sake of argument only that Petitioner is legally correct that any or all of the complained omissions could or should have been included in the instructions, examining the trial in its total context, Petitioner has failed to show that any of the alleged flaws "had substantial and injurious effect or influence in determining the jury's verdict." *See Hedgpeth*, 555 U.S. at 58.

Therefore, Petitioner's remaining claims regarding the jury instructions – *see* ECF No. 155 at 76 (Ground 11B), 84 (Ground 13A), 93 (Ground 15), 96 (Ground 16A), 101 (Ground 17A), 165 (Ground 32A), 179 (Ground 36) – are **DENIED.**

---

[10] Petitioner cites *United States v. U.S. Dist. Court for Cent. Dist. of California, Los Angeles, Cal.*, which held that the First Amendment requires a reasonable mistake of age defense for prosecution under § 2251, a statute prohibiting the production of materials depicting a minor engaged in explicitly sexual conduct. *See* 858 F.2d 534, 543 (9th Cir. 1988). *U.S. Dist. Court* does not change the result. First, as *U.S. Dist. Court* held, the statute at issue was a strict liability offense where knowledge of the age of the victim is not a necessary element of the crime, and further that the statute itself did not provide an affirmative defense. *Id.* at 538. § 1512(b)(1) is not a strict liability offense and thus already distinguishable. Second, *U.S. Dist. Court* only held that the First Amendment requires a reasonable mistake of age be permitted as an affirmative defense to a § 2251 charge. § 1512(e)'s affirmative defense was available to Petitioner at the time of his trial. Unlike in *U.S. Dist. Court*, Petitioner did not request such an instruction at trial. Also unlike *U.S. Dist. Court*, the Government here is not disputing whether § 1512(e) provides an available affirmative defense in the first instance. Petitioner had every opportunity to put on evidence of this affirmative defense, request the appropriate jury instruction, and argue to the jury that he was entitled to the affirmative defense, but Petitioner chose not to do so. *U.S. Dist. Court* does not change the result.

37

**G.**     **Intervening Authority**

Petitioner raises several grounds claiming post-conviction authority requires vacating his convictions.[11]  Even if the Court assumes that the cited case law was "not reasonably available" at the time of Petitioner's trial, constituting "cause" sufficient to excuse his procedural default, *see, e.g., Reed*, 468 U.S. at 17, and further assuming that retroactive application on collateral review of all the cited cases is permissible,[12] none of the cited intervening authority requires vacating Petitioner's convictions.

First, Grounds 29 (ECF No. 155 at 156) and 31A (ECF No. 155 at 161) argue that the definition of the word "intimidation" given in the jury instructions and Government's closing – "the use of any words or any actions that would harass, frighten or threaten a reasonable, ordinary person to do something that person would not otherwise do, or not to do something that the person otherwise would do," ECF No. 118 at 36, unconstitutionally imposed a negligence standard in violation of *Elonis v. U.S.*, 135 S. Ct. 2001 (2015).  Petitioner is incorrect that *Elonis* requires vacating his convictions on counts 5 and 6.  *Elonis* held that, because 18 U.S.C. § 875(c) did not contain a *mens rea* requirement, it was necessary to imply more than a negligence standard.  *See Elonis¸* 135 S. Ct. at 2011 ("Elonis's conviction, however, was premised solely on how his [threats] would be understood by a reasonable person. Such a 'reasonable person' standard is a familiar feature of civil liability in tort law but is inconsistent with 'the conventional requirement for criminal conduct—awareness of some wrongdoing.'") (internal citations omitted).  Unlike in *Elonis*, here, the statute and jury instructions explicitly required "more than a mental state of negligence." *Id.* at 2004.  § 1512(b)(1) expressly contains a *mens rea* requirement regarding a defendant's intimidation, *i.e.*, that the defendant

---

[11] This section does not discuss all the post-conviction authority cited by Petitioner, rather only the relevant authority which did not otherwise fit into a different section of this order.

[12] *See, e.g., Jones Stevedoring Co. v. Dir., Office of Workers' Comp. Programs*, 133 F.3d 683, 688 (9th Cir. 1997) ("[W]hen a court delivers a ruling, even if it is unforeseen, the law has not changed. Rather, the court is explaining what the law always was."); *Teague v. Lane*, 489 U.S. 288, 310 (1989) (plurality opinion); *Chaidez v. United States*, 133 S. Ct. 1103, 1107-8 (2013); *Bousley*, 523 U.S. at 619-21.

"knowingly use[] intimidation," and the Court instructed the jury accordingly here.[13]  Petitioner was not convicted under an unconstitutional negligence standard, and *Elonis* is not relevant to the determination here.  *See also Hunt*, 622 Fed. App'x at 658 ("The government produced evidence that Hunt directed others to intimidate the victim; directed his girlfriend to put pressure on witness Natalie Kelly and accused Kelly of cooperating with the authorities; and made similar accusations to witness Roxanne Sanchez. . . . The evidence here [also] was sufficient to allow a rational juror to conclude that Hunt encouraged Sanchez to testify falsely and attempted to intimidate Kelly into not testifying.").

Second, Grounds 40A (ECF No. 155 at 195) and 40B (ECF No. 155 at 197) argue that *United States v. Liew*, 856 F.3d 585, 589 (9th Cir. 2017) requires Petitioner's convictions for counts 3-6 under §§ 1503 and 1512 be vacated, or that Petitioner be granted a new trial as to those counts.  In *Liew*, the court reversed defendant's § 1512(b)(1) conviction, as it was premised solely on defendant telling a co-defendant in a related civil suit to not reveal the names of two third-party individuals who were involved with the trade secret dispute at issue.  *See* 856 F.3d at 592 ("Liew told Liu not to reveal the names of Maegerle and Spitler (who were not named in the lawsuit), and that it would not be "good for anybody, not even good for [Liu's] family" if Liu revealed their names"), 604 ("The indictment alleged that Liew sought to influence, delay, or prevent Liu's testimony in the DuPont civil lawsuit when he told Liu not to mention anything about any former DuPont employees who worked for USAPTI because doing so would not be good for Liu or Liu's family").  The Ninth Circuit held that this evidence, as presented at trial and standing alone, was insufficient to sustain a § 1512 conviction because the defendant "provided the same advice that many criminal attorneys would in that situation—to not discuss the matter with anyone, and to risk otherwise could have bad effects on one's family. Sometimes the best advice for a

---

[13] *See* ECF No. 118 at 36 ("The government is not required to prove that the person to be threatened or intimidated actually felt threatened or intimidated or influenced or that there was any actual delay or withholding of that person's testimony. However, the government must prove beyond a reasonable doubt that the defendant acted with the intent to influence, delay or prevent testimony. An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake or accident.").

potential criminal defendant is not to talk to anyone about anything, and Liew's words appear little more than that." *Id.* at 604.

Here, Petitioner's conviction was not solely premised on Petitioner telling a co-defendant in a related civil suit, prior to indictment, "to not discuss the matter with anyone, and to risk otherwise could have bad effects on one's family." *Id.* As the Ninth Circuit already held in this case, "[As to the § 1503 charge,] [t]he government produced evidence that Hunt directed others to intimidate the victim; directed his girlfriend to put pressure on witness Natalie Kelly and accused Kelly of cooperating with the authorities; and made similar accusations to witness Roxanne Sanchez. . . . [And as to the § 1512 charge,] "[t]he evidence here was sufficient to allow a rational juror to conclude that Hunt encouraged Sanchez to testify falsely and attempted to intimidate Kelly into not testifying." *Hunt*, 622 Fed App'x at 658. Thus, *Liew* does not requiring vacating Petitioner's § 1503 and § 1512 convictions.

Therefore, Petitioner's remaining grounds based on intervening authority – *see* ECF No. 155 at 156 (Ground 29), 161 (Ground 31A), 195 (Ground 40A), and 197 (Ground 40B) – are **DENIED**.

## H. **Alleged *Brady* Violations**

Petitioner's ground 44A argues the Government withheld exculpatory and impeaching evidence in violation of *Brady*. *See* ECF No. 155 at 205. Petitioner claims that, on the day of his sentencing, Detective Fries visited the jail and attempted to give Mr. Hunt "Post-Trial Discovery."[14] Petitioner

---

[14] Petitioner also includes a request for counsel to be appointed to "determine the relevance and materiality of the late discovery . . . . And then be allowed with the assistance of counsel to make a Motion for a New Trial . . . ." ECF No. 155 at 207. Petitioner also claims that the materials in his possession shows further discovery is necessary, but Petitioner makes no showing whatsoever of his basis for that claim. Petitioner later renewed his request for counsel, on the basis that the Court referred to his claims as "complex." *See* ECF No. 200. The Court previously denied Petitioner's motion for appointment of counsel to assist with the § 2255 Petition. *See* ECF No. 181. There, the Court noted that Petitioner had failed to establish that the "issues are so complex that the denial of an appointment of counsel will deprive him of his right to due process." ECF No. 181 at 3. The Court re-affirms this finding. The Court's use of the word "complex" in its minute order notifying the parties of additional time needed to rule was in no way intended as a reconsideration of the Court's original denial of appointed § 2255 counsel. The Court was simply noting that the length and density of Petitioner's § 2255 briefing meant it took significant Court resource and time to draft and issue this Order. However, this does not change the finding that Petitioner failed to establish that discovery is required, an evidentiary hearing is required, or that the issues are so complex that the denial of appointed counsel will deprive Petitioner of his right to due process. The record here clearly shows and the Court again finds Petitioner is able to represent himself based on his filings articulating clear, informed (though ultimately meritless) legal and factual position and arguments. *See, e.g., Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983) ("In deciding whether to appoint counsel in a habeas proceeding, the district court must evaluate the likelihood of success on the

requested the documents be mailed to him instead. The documents were mailed to Petitioner and

allegedly containing over 100 pages of discovery Bates stamped Nos.285-406, as well as a disc Bates

stamped No. 406. Ms. Hart's letters note that the CD stamped Bates No. 406 was a Fresno Police

Department report. ECF No. 175-1 at 19. Ms. Hart also notified Petitioner that she could not raise the

*Brady* issue on appeal, and that he would have to raise it in a habeas petition. *See id.* Her letter is not

clear, but implies that the alleged materials were not introduced or testified to at trial, or discussed in

pre-trial hearings. *Id.* Petitioner provides no substantive description of the materials. The Court was

unable to locate any further descriptions of the alleged *Brady* materials in any of the § 2255 briefing or

the record of this case. Petitioner argues that these materials should have been disclosed before trial.

   The due process clauses of the Fifth and Fourteenth Amendments to the Constitution, as

interpreted by the United States Supreme Court in *Brady v. Maryland*, require the prosecution to learn of

and disclose to the defense any exculpatory or impeachment evidence favorable to the accused that is in

the prosecution's possession. *See* 373 U.S. 83, 87 (1963). *Brady* places an affirmative duty on the

prosecutor to seek out information in the government's possession that is favorable to the defendant.

*See Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *United States v. Price*, 566 F.3d 900, 908-09 (9th Cir.

2009). However, the government has no obligation to "single out" particular pieces of exculpatory

---

merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved."); *Bashor v. Risley*, 730 F.2d 1228, 1234 (9th Cir. 1984) (finding no abuse of discretion where district court denied appointment of counsel in 2255 proceeding because "[a]lthough the appellant is over 60 years of age and has no background in the law, he thoroughly presented his issues in the habeas petition and the accompanying memorandum of law"); *Davis v. United States*, No. 1:07-CR-00255-EJL, 2016 WL 6471012, at *4 (D. Idaho Nov. 1, 2016) (denying appointment of standby counsel in 2255 proceeding because, inter alia, "record clearly shows the Petitioner is able to represent himself based on his filings articulating his legal and factual position/arguments"); *Franklin v. United States*, No. SACR 06-0166-DOC, 2014 WL 12691082, at *2 (C.D. Cal. Sept. 16, 2014) (declining to appoint counsel in 2255 proceedings where the petitioner "has demonstrated a good understanding of the matter at issue on remand and 'the ability to present forcefully and coherently his contentions'") (quoting *La Mere v. Risley*, 827 F.2d 622, 626 (9th Cir. 1987)); *United States v. Mercado*, No. CR-07-2018-FVS-1, 2011 WL 573377, at *5 (E.D. Wash. Feb. 14, 2011) (denying appointment of counsel where "the defendant has demonstrated the ability to set forth those grounds he thinks justify relief under § 2255" and the parties' filings and record give the court "a reliable basis for assessing the validity of the grounds asserted by the defendant"). Denial of § 2255 counsel does not deprive Petitioner of due process. Therefore, for the same reasons as stated in its original order denying habeas counsel, and incorporating that Order by reference, as well as because Petitioner has not shown an evidentiary hearing or discovery is appropriate or required, nor has Petitioner shown that denial of counsel here will deny Petitioner due process, Petitioner's requests will be **DENIED**.

evidence that are beneficial to the defendant. *Rhoades v. Henry*, 638 F.3d 1027, 1039 (9th Cir. 2011). "[S]trictly speaking, there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). When making a claim under *Brady*, the burden of proving the need for disclosure is on the defendant. *See United States v. Sai Keung Wong*, 886 F.2d 252, 256 (9th Cir. 1989). "The mere suspicion that information will prove helpful is insufficient to require disclosure." *Id.*

Petitioner wholly fails to meet his burden to show a "reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281. Petitioner does not provide any explanation of the contents of the alleged *Brady* materials, much less how the materials exonerate him, how they are favorable impeachment evidence, or how he otherwise was prejudiced by their late disclosure. Petitioner offers no description of the contents of this report or the remaining materials and does not describe how the materials exonerate Petitioner. Indeed, Petitioner makes no showing whatsoever that the materials at issue would have produced a different verdict. The Court fully expects if Petitioner possessed *Brady* evidence, the specifics would have appeared in his briefing. This Petitioner's briefing, totaling well beyond 200 pages consisting of more than 50 claims, is sophisticated and detailed, and it is reasonable to expect this Petitioner, even if *pro se*, to meet such a bare minimum showing regarding the specifics of the alleged *Brady* materials.

Therefore, Petitioner's *Brady* ground – *see* ECF No. 155 at 205 (Ground 44A) – is **DENIED**.

## I. <u>Frivolous Issues</u>

Finally, a number of the issues Petitioner claims should have been raised on appeal are palpably incredible, patently frivolous as either a matter of law or upon cursory review of the record, or are alleged in a conclusory and vague manner. Thus, these grounds can be dismissed with minimal discussion, as described below. *See Shah*, 878 F.2d at 1161 (9th Cir. 1989) (affirming summary dismissal of "palpably incredible or patently frivolous" § 2255 claim); *James*, 24 F.3d at 26

("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

- Petitioner's Ground 2A argues that there was a conspiracy on the part of the trial prosecutor and investigating detective to fabricate and alter victim testimony to allow the Government to satisfy the interstate commerce element. *See* ECF No. 155 at 4, 9. Petitioner offers nothing but vague and conclusory allegations, with no specific facts or evidence of such a conspiracy, and thus Ground 2A is denied.

- Petitioner's Ground 5 argues that § 1591(c)'s "reasonable opportunity to observe" language was improperly included in the "final oral jury instructions" without giving Petitioner an opportunity to object. *See* ECF No. 155 at 26. First, as described above, inclusion of the § 1591(c) "reasonable opportunity to observe" language in the jury instructions and verdict form was harmless error. Second, Petitioner is factually incorrect that he was not given notice and time to object to the phrase. The joint jury instructions filed by Petitioner's third and final counsel before trial included § 1591(c)'s language. *See* ECF No. 50 at 23. Further, the amended version of that jury instruction, which was ultimately given at trial, also included a § 1591(c) instruction. *See* ECF No. 67 at 2; ECF No. 118 at 33-34. Petitioner did not dispute nor object to either iteration of the instruction. Petitioner's Ground 5 is patently frivolous.

- Petitioner's Ground 6A claims that the Government used "[t]rickery" to get "alleged assaultive conduct" before the jury and prejudiced the jury against the Defendant. Petitioner also claims the Government knowingly or recklessly submitted false or fabricated information in its trial brief in order to defraud the Court—the false information being that Petitioner made the clinic appointment with the victim at which she received condoms. *See* ECF No. 155 at 27. Petitioner claims this allowed the Government to establish the interstate commerce element, in turn allowing the

Government to obtain a conviction based on Petitioner's violence towards the victim during a period when Petitioner argues the Government had no jurisdiction. Petitioner is factually incorrect, because while the Government's trial brief (which is not evidence) did state Petitioner made the appointment, *see* ECF No. 53 at 4, the Government in fact elicited from the victim in her direct examination that the victim made the appointment at issue. *See* ECF No. 115 at 202. Petitioner's vague assertions without any actual facts or relevant law do not establish any unconstitutional conduct. The fact that Petitioner did not make the appointment changes nothing, Petitioner provides no actual specific facts demonstrating Government misconduct, and Ground 6A is denied.

- Petitioner's Ground 26 asserts that the Government intentionally misled the Court, jury, and defense by eliciting testimony from witness Regina Joshua regarding a Facebook post made by Petitioner and by introducing both a phone call between Petitioner and Ms. Joshua regarding the post and the post itself. *See* ECF No. 155 at 144. Petitioner claims that the Government introduced this evidence while knowing that a third-party (who did not testify at trial) allegedly made the posting. *Id.* at 15. Petitioner points out that Ms. Joshua testified on direct examination that she did not carry out Petitioner's instruction to post the message on his Facebook page. *See* ECF No. 117 at 40-41. At threshold, Petitioner fails to articulate with specificity how his constitutional rights were violated or otherwise articulate any actual prejudice suffered. Moreover, Petitioner's allegation of prosecutorial misconduct is meritless. There was nothing misleading in the Government's presentation of this evidence. Ms. Joshua testified Petitioner asked her to go on his Facebook page to type a message. *See* ECF No. 117 at 40-41. FBI Agent Nicholas Pottratz testified, based on his investigation and the phone calls between Ms. Joshua and the Petitioner that one phone call dictated a message very similar to what was ultimately posted on Petitioner's Facebook page. *See id.* at 45-48. Petitioner did not

present evidence regarding this third party's involvement and the only mention of her at trial was in a recorded phone call between Petitioner and the third party, which was played by the Government.  *See id.* at 51-52.  Petitioner chose not to present the recorded calls or any of the evidence which he claim impeaches Agent Pottratz's testimony.  The jury was free to accept the direct and circumstantial evidence that Petitioner directed the Facebook message to be put up and reject Ms. Joshua's contradictory testimony on cross-examination as unreliable.  There was nothing misleading presented, much less any evidence of the Government intentionally misleading the jury, and Ground 26 will be denied.

Overall, Petitioner cites little-to-no law in support of the above grounds, any the law cited is mischaracterized or simply irrelevant, and Petitioner's descriptions of the facts are directly contradicted by the record.  The core allegations of prosecutorial fraud are vague and conclusory.  To the extent specific facts are offered, they are irrelevant and do not demonstrate any constitutional violation or other error.  Dismissal of such claims is appropriate. *See Shah*, 878 F.2d at 1161; *James*, 24 F.3d at 26.  Therefore, these grounds – *see* ECF No. 155 at 4, 9 (Ground 2A), 27 (Ground 6A), and 144 (Ground 26) – do not warrant habeas relief, and are **DENIED**.

**J.**    **Supplemental Filings**

After filing his reply, Petitioner filed several supplemental briefs with additional case law.  *See* ECF Nos. 188-90, 192, 198.  To the extent consideration of cases decided after Petitioner's conviction became final is relevant to Petitioner's actual claims, the Court has done so above.  The remaining supplemental authority provided by Petitioner is irrelevant or otherwise does not change the result of his claims. *See Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1903 (2018) (in the ordinary case, sentencing errors constitute plain error); *Marinello v. United States*, 138 S. Ct. 1101, 1109 (2018) (conviction under IRS obstruction statute requires "nexus" between defendant's conduct and a particular administrative proceeding, and proceeding must be pending at the time or at least reasonably foreseeable

by the defendant); *Tamplin v. Muniz*, 894 F.3d 1076, 1084 (9th Cir. 2018) (holding that a "criminal defendant's unsuccessful attempt to hire private counsel does not make equivocal his request to represent himself" for purposes of *Faretta*); *United States v. Rodriguez*, 880 F.3d 1151, 1161 (9th Cir. 2018) (for purposes of jury instructions, "a correct definition of 'reckless disregard,' . . . would include '[the defendant's] disregard[ ] [of] a risk of harm of which [the defendant] is aware.'") (internal citations omitted); *United States v. Tydingco*, 909 F.3d 297, 302-4 (9th Cir. 2018) (jury instructions for charge of violating harboring an alien in violation of 8 U.S.C § 1324(a)(1)(A)(iii) require a finding that defendants intended to violate the law). Thus, Petitioner's supplemental submissions do not alter the Court's decision.

## K. No Evidentiary Hearing Is Warranted

Petitioner makes several requests for a hearing as independent claims. *See* ECF No. 155 at 14 (Ground 2C), 19 (Ground 3B), 80 (Ground 12), 208 (Ground 44C). Petitioner's motion also contains numerous requests for hearings embedded within grounds for relief.

The Ninth Circuit has held that courts may deny a request for an evidentiary hearing where the allegations, "viewed against the record, fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotations and citations omitted); *see also United States v. Withers*, 638 F.3d 1055, 1062-63 (9th Cir. 2011). To warrant a hearing, a petitioner must make specific factual allegations that, if true, would entitle him to relief. *Withers*, 638 F.3d at 1062. Conclusory allegations are insufficient, without more, to warrant a hearing on a § 2255 motion. *See United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980); *Shah*, 878 F.2d at 1161. Moreover, "where the issue of credibility can be 'conclusively decided on the basis of documentary testimony and evidence in the record,' no evidentiary hearing is required." *Shah*, 878 F.2d at 1159 (internal quotations and citations omitted). "In addition, judges may use their own notes and recollections of the plea hearing and sentencing process to supplement the record." *Id.*

The Court has found that Petitioner has not made any specific factual allegations that, if true, would entitle him to relief. As described above, Petitioner offers mostly conclusory allegations, that are at best incorrect as a matter of law or conclusively contradicted by the documentary testimony and evidence in the record, and that are at worst palpably incredible or patently frivolous. There is no reason to believe any evidence or information of material import relevant to Petitioner's claims would revealed by a hearing. Any issues of credibility could be and were conclusively decided on the basis of documentary testimony and evidence in the record. Therefore, Petitioner is not entitled to a hearing and his requests for a hearing, including both the separately set out grounds requesting hearings – *see* ECF No. 155 at 14 (Ground 2C), 19 (Ground 3B), 80 (Ground 12), 208 (Ground 44C) – and scattered requests contained within other grounds, are **DENIED**.

**L.      Certificate of Appealability**

A defendant cannot appeal from the denial or dismissal of his § 2255 motion unless he has first obtained a certificate of appealability. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability will issue only when a defendant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard when the Court has dismissed a § 2255 motion (or claims within a § 2255 motion) on procedural grounds, a defendant must show that reasonable jurists would find debatable (1) whether the court was correct in its procedural ruling, and (2) whether the motion states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the Court has denied a § 2255 motion or claims within the motion on the merits, a defendant must show that reasonable jurists would find the Court's decision on the merits to be debatable or wrong. *Id.*

The Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right. The Court further finds that reasonable jurists would not find debatable the correctness of the Court's procedural rulings nor whether Petitioner's motion states a valid claim of the denial of a constitutional right. *Slack*, 529 U.S. at 483. Indeed, on the merits of this case, reasonable

jurists would not find the Court's decision debatable or wrong, or otherwise debate the constitutionality of Petitioner's conviction. A certificate of appealability is improper under the circumstances. Accordingly, the Court **DECLINES** to issue a certificate of appealability.

## V. CONCLUSION AND ORDER

For the reasons stated above, Petitioner's § 2255 motion, ECF No. 155, is **DENIED** in its entirety. Similarly, as discussed above, Petitioner's request for § 2255 counsel, ECF No. 200, is **DENIED**. Petitioner's Supplemental Requests, ECF Nos. 190, 192-93, 195, are **DENIED** as moot, as the Court has found they do not alter the result of this Order.

IT IS SO ORDERED.

Dated:   **November 7, 2019**                **/s/ Lawrence J. O'Neill**
                                    UNITED STATES CHIEF DISTRICT JUDGE